## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **AUBREY A. WALLER,** | : | **Case No. 1:08-CV-936 (1:04-CR-13)** |
| **Petitioner,** | : | |
| | : | **JUDGE KATHLEEN M. O'MALLEY** |
| **v.** | : | |
| **UNITED STATES OF AMERICA,** | : | **MEMORANDUM & ORDER** |
| **Defendant.** | : | |

Before the Court are the following five (5) motions brought by *pro se* petitioner Aubrey A. Waller ("Waller"): (1) Motion to Vacate Under 28 U.S.C. § 2255 (Doc. 313); (2) Motion for Leave to Amend § 2255 Petition (Doc. 317); (3) Motion for Stay and Abeyance (Case No. 1:08-CV-936, Doc. 2); and (4) two motions for Evidentiary Hearings (Doc. 327 and Case No. 1:08-CV-936, Doc. 3).[1]  For the reasons articulated below, Waller's Motion to Amend his § 2255 Motion is **GRANTED**, his Motion for Stay and Abeyance is **DENIED** as moot, his Motions for Evidentiary Hearings are **DENIED**, and his § 2255 Motion is **DENIED**.  Waller's case, therefore, is **DISMISSED**.

## I.    BACKGROUND

### A.    Factual Background

On December 22, 2003, Darnell Lester, a cooperating witness for the FBI's New York office, was carjacked at gunpoint and held for ransom by Petitioner Aubrey Waller and another individual, Gary Ervin, in Cleveland.  While he was being held captive, Lester was able to call his FBI contact, Agent O'Rourke, via cell phone.  Through a series of brief phone conversations, the first of which

---

[1]Unless otherwise noted, all document references ("Doc.") are to the docket in the corresponding federal criminal action, Case No. 1:04-CR-13.  Waller's § 2255 motion is Doc. 1 of this civil action, Case No. 1:08-CV-936.

began at roughly 9:00 p.m., Agent O'Rourke was able to determine that Lester was being held against his will by armed individuals who were demanding ransom.  (Doc. 296 at 311:21-25; 315:6-316:9.)  Agent O'Rourke conveyed this information to the FBI's Cleveland office in an effort to coordinate a rescue attempt.  (Doc. 296 at 317:18-318:14.)

Eventually, a meeting to exchange Lester for ransom was arranged between the FBI and Lestor's captors.[2]  This meeting was to take place at a Rally's restaurant on Euclid Avenue in Cleveland.  (Doc. 296 at 329:7-12.)

Waller and Ervin arrived at the Rally's in a green, four-door, GMC Jimmy.  Ervin was driving the vehicle and both Waller and Lester were passengers.  At roughly 1:10 a.m. on December 23, 2003, the FBI SWAT team, consisting of several agents in multiple vehicles, arrived at Rally's.  (Doc. 296 at 387:16-388:9.)  The SWAT team saw the green Jimmy and moved in to contain the vehicle.  Once the Jimmy was stationary, one of the FBI agents exited his vehicle in an effort to further contain those inside.  (Doc. 298 at 588:13-589:6.)  After exiting the vehicle, the agent saw that the Jimmy started coming directly towards him and was picking up speed.  (Doc. 298 at 591:5-592:13.)  Believing that his life was in danger, the agent fired three shots at the Jimmy.  (Doc. 298 at 594:6-19; 610:10-12).  Two of those shots struck and injured Ervin, and one struck and killed Lester.  (Doc. 298 at 629:1-19.)

───────────────

[2]In his brief conversations with Lester, Agent O'Rourke, believing that the individuals who were holding Lester captive might be listening in, attempted to portray himself as a member of Lester's crew.  (Doc. 296 at 320:14-24.)  During those conversations, Lester instructed O'Rourke to "bring three" to the meeting place, which O'Rourke interpreted as a specific quantity of drugs or money which was to be exchanged for Lester's release.  (*Id*. at 323:22-324:8.)

The Jimmy was able to break through the agents' containment efforts but subsequently crashed into a fence. (Doc. 299 at 877:15-24.) At that point, Waller opened the rear driver's side door of the Jimmy and fired at least two rounds at the FBI agents. (Doc. 299 at 790:6-19; 877:15-24.) When the agents returned fire, Waller discarded his firearm and surrendered. (Doc. 299 at 791:4-12.) The agents approached the Jimmy and pulled Ervin and Waller out of the vehicle. (Doc. 298 at 609:20-610:5; Doc. 299 at 791:13-19.) Darnell Lester was found dead in the front passenger seat. (Doc. 296 at 389:9-390:5.) The agents arrested Waller and Ervin and secured the area. At that point, the agents searched for Waller's firearm and found a semiautomatic handgun, which had jammed, in the back of the vehicle. (Doc. 299 at 794:13-21.)

On August 4, 2004, a federal grand jury for the Northern District of Ohio returned an indictment charging Waller and Ervin with the following:

- Count 1: carjacking in violation of 18 U.S.C. § 2119 and 2;

- Count 2: carrying and using a firearm during and in relation to carjacking in violation of 18 U.S.C. § 924(c)(1)(A) and 2;

- Counts 3-6: attempting to murder and/or assault four (4) Federal Bureau of Investigation ("FBI") agents: Todd Werth, Kenneth Riolo, Michael Brunswick, and Robert McBride, while they were engaged in their official duties, in violation of 18 U.S.C. § 1114 and 2;

- Counts 7-8: using a dangerous weapon, namely a motor vehicle, to assault, resist, oppose, impede, intimidate, and interfere with FBI agents Edward Satterfield and Robert Butrey while they engaged in their official duties, in violation of 18 U.S.C. § 111 and 2;

- Count 9: carrying and using a firearm, namely a Bryco 9mm pistol, in relation to attempted murder of a federal officer, in violation of 18 U.S.C. § 1114 and 2.

3

(*See* Doc. 151.)[3]

**B.    Procedural Background**

In the first trial, which commenced on August 17, 2004, the Court was forced to declare a mistrial after a spectator's outburst caused commotion during trial.  (*See* Doc. 212.)  On August 24, 2004, Waller and Ervin proceeded to a jury trial.  On September 10, 2004, a jury found Waller guilty on Counts 1-6 and 9, and not guilty as to Counts 7 and 8.  (Doc. 250.)  On September 16, 2004, Waller filed a Motion for Acquittal as to the Lesser Offense Under Count 3 of the Indictment, which the Court denied on October 14, 2004.

On February 25, 2005, the Court sentenced Waller to the following:

- 180 months on Count 1 to run concurrent with Counts 3-6;

- 84 months on Count 2 to run consecutive to Counts 1, 3-6, and 9;

- 96 months on Count 3 to run concurrent to Counts 1 and 4-6;

- 240 months on Counts 4-6 to run concurrent to Counts 1 and 3 (except to the extent that 60 months of that sentence was to run consecutive to terms imposed); and

- 300 months on Count 9 to run consecutive to Counts 1-6, for a total period of 684 months imprisonment.

(Doc. 270.)  Waller was also sentenced to a period of five (5) years of supervised release with special conditions.  (*Id.*)  The judgment of conviction was entered on March 15, 2005.  (Doc. 272.)

On March 18, 2005, Waller filed a notice of appeal to the Sixth Circuit.  (Doc. 275.)  On appeal, Waller argued that his Sixth Amendment right to Confrontation was violated when the

---

[3]On January 6, 2004, Waller and Ervin were charged in a six-count indictment.  (Doc. 11.)  On February 18, 2004, the government filed a first superseding indictment adding additional charges.  (Doc. 54.)  On August 4, 2004, the government filed a second superseding indictment, to which the Court refers herein.  (Doc. 151.)

4

district court permitted introduction of the hearsay testimony of Darnell Lester through Special Agent O'Rourke.[4]

The Sixth Circuit affirmed this Court's decision on December 26, 2006.  *See United States v. Ervin et al.*, 209 Fed. Appx. 519 (6th Cir. 2006).  Subsequently, on May 11, 2005, the Sixth Circuit issued a mandate affirming the judgment of this Court.  (Doc. 307.)  Waller then filed a petition for *writ of certiorari* in the United States Supreme Court, which the Court denied on October 1, 2007.  *See Waller v. United States*, 552 U.S. 907 (2007).

On April 11, 2008, Waller filed the instant § 2255 Motion seeking a writ of habeas corpus. In his Motion, Waller asserts the following seven claims for relief:

> **Claim One:** The District Court violated Waller's right to Public Trial as defined in In Re Oliver, 333 U.S. 257 (1948) when failing to [meet] the four prong requirement mandate in Waller v. Georgia, 467 U.S. 39 (1984) before closing the courtroom to the public violating Waller's Sixth Amendment to the United States Constitution.

> **Claim Two:** Appellate counsel was ineffective for failing to raise the issue that the District Court violated Waller's right to a Public Trial as defined in In Re Oliver, 333 U.S. 257 (1948); and Waller v. Georgia, 467 U.S. 39 (1984) violating Waller's Fifth and Sixth Amendments to the United States Constitution . . .  Underlying this claim is a charge that trial counsel was ineffective for failing to renew his objection to the District Court closing the proceedings at the start of Waller's new trial, to ensure this error was reserved for appellate review.

> **Claim Three:** Appellate counsel was ineffective for failing to raise the issue that the District Court violated Waller's Due Process rights to present a defense and Compulsory Process rights to call witnesses in his favor when denying counsel's request to call Supervisory Special Agent (SSA) Joseph D. Riley and Supervisory Special Agent (SSA) Stephen A. Bucar to help perfect his defense violating Waller's Fifth and Sixth Amendments to the United States Constitution.

---

[4]Appellate counsel did not make other specific claims that, as discussed below, Waller now contends should have been made.

**Claim Four:** Counsel was ineffective for failing to object to the consecutive sentences of counts 2 and 9 § 924(c) conviction under the Proper Unit of Prosecution as defined in <u>United States v. Universal C.I.T. Credit Corp.</u>, 344 U.S. 218 (1952) and its progeny violating Waller's Fifth and Sixth Amendments to the United States Constitution.

**Claim Five:** Counsel was ineffective for failing to object to the prosecutor violating Waller's Confrontation rights when eliciting hearsay evidence of Antwan McPherson through government witness Veron Black violating Waller's Fifth and Sixth Amendments to the United States Constitution.

**Claim Six:** Waller was deprived of his constitutional right to testify on his own behalf due to ineffective assistance of counsel violating his Fifth and Sixth Amendments to the United States Constitution.

**Claim Seven:** Waller's Sixth Amendment right to Confrontation was violated when the District Court allowed the hearsay evidence of Darnell Lester into trial.

(Doc. 313). Waller also filed a Motion for Evidentiary Hearing (Case No. 1:08-CV-936, Doc. 3) and a Motion for Stay and Abeyance (Case No. 1:08-CV-936, Doc. 2).[5]

On May 15, 2008, Waller filed a Motion for Leave to Amend his § 2255 Petition in which he asserted the following additional claim (referred to herein as "Claim Eight"):

The District Court erred when denying Waller's motion for judgment of acquittal on count 1 § 2119 conviction where the government failed to prove every element beyond a reasonable doubt; appellate counsel was ineffective for failing to take notice and argue the same violating Waller's Fifth and Sixth Amendments to the United States Constitution.

---

[5]Waller's Motion for Stay and Abeyance requests that the Court stay the proceedings pending the United States Supreme Court's decision in *Giles v. California*, 128 S.Ct. 2678, 171 L.Ed.2d 488 (2008). (Case No. 1:08-CV-936, Doc. 2). *Giles* was decided on June 25, 2008, and therefore was decided prior to this Court's decision on Waller's § 2255 Motion. Accordingly, Waller's Motion for Stay and Abeyance is hereby **DENIED** as moot. The Court notes, however, that, as discussed in detail below, it is not necessary for the Court to analyze the application of *Giles* to the present case.

(Doc. 317 at 2.)[6]

On June 20, 2008, the government filed a Response in Opposition (Doc. 321).  On August 26, 2008, Waller  filed a Traverse in Response (Doc. 325), and a second Motion for Evidentiary Hearing (Doc. 327).  Waller's § 2255 Motion is now ripe for adjudication.

## II.    STANDARD OF REVIEW

A petitioner who moves to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255 must demonstrate that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255.

A petitioner seeking relief under § 2255 must allege that:  (1) his conviction resulted from an error of constitutional magnitude; (2) his sentence was imposed outside the statutory limits; or

---

[6]A motion to amend a § 2255 motion is governed by Rule 15 of the Federal Rules of Civil Procedure.  *See Jackson v. United States*, No. 06-20368, 2008 U.S. Dist. LEXIS 44759, *8 (E.D. Mich. June 9, 2008); 28 U.S.C. § 2242 (providing that a writ of habeas corpus "may be amended or supplemented as provided in the rules of procedure applicable to civil actions"); *United States v. Hicks*, 283 F.3d 380, 386 (D.D.C. 2002)(finding that § 2242 applies to § 2255 proceedings and therefore, "such motions may be amended under the terms set by Rule 15(a)").  Rule 15(a) provides, in pertinent part, that a party may amend its pleadings "once as a matter of course at any time before a responsive pleading is served."

Waller's proposed amendment is subject to the one year statute of limitations period applicable to § 2255 motions.  *See Oleson v. United States*, 27 Fed.Appx. 566, 570 (6th Cir. 2001).  The one year time period runs from "the date on which the judgment of conviction becomes final."  *See* 28 U.S.C. § 2255(f).  Waller's judgment became final on October 1, 2007, when the United States Supreme Court denied his petition for *writ of certiorari*.  Waller filed his § 2255 Motion on April 11, 2008, and his Motion for Leave to Amend on May 15, 2008.  Both of these motions were filed within the applicable one year statute of limitations and are timely.  The Court notes, moreover, that Waller filed his Motion to Amend before the government's response was filed.  As a result, Waller's Motion to Amend his § 2255 Petition is hereby **GRANTED**.

(3) an error of fact or law occurred that was so fundamental as to render the entire proceedings invalid. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006); *see also Wright v. United States*, 182 F.3d 458, 463 (6th Cir. 1999). The petitioner has the burden of sustaining his allegations by a preponderance of the evidence. *Pough*, 442 F.3d at 964; *see also McQueen v. United States*, 58 Fed. Appx. 73, 76 (6th Cir. 2003) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence." (citation omitted)).

It is well-established that "to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998). Indeed, to prevail under § 2255, a defendant "must show a 'fundamental defect' in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Id.* (citing *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994)).

As a general rule, constitutional or statutory challenges cannot be made for the first time in a § 2255 motion. *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001). Instead, such challenges must be made on direct appeal or they are waived. *Id.* If a defendant procedurally defaults a claim by failing to raise it on direct appeal, the claim can only be raised in a § 2255 motion if the petitioner can show either: (1) cause to excuse his failure to raise the claim previously and "actual prejudice" resulting from the alleged violation; or (2) that he is "actually innocent." *Bousley v. United States*, 523 U.S. 614, 621 (1998).

The procedural default rule does not apply to claims of ineffective assistance of counsel. Indeed, the Sixth Circuit has expressly indicated that ineffective assistance of counsel claims are "best brought by a defendant in a post-conviction proceeding under 28 U.S.C. § 2255 so that the

8

parties can develop an adequate record on the issue." *United States v. Seymour*, 38 F.3d 261, 263 (6th Cir. 1994) (internal citation omitted).

## III.    AN EVIDENTIARY HEARING IS NOT REQUIRED

Under Rule 8 of the Rules Governing Section 2255 Proceedings for the United States District Courts, a court must first determine whether an evidentiary hearing is required after a review of the answer and the records of the case.  If the motion, answer, and records of the case show conclusively that a petitioner is not entitled to relief under 28 U.S.C. § 2255, then there is no need for an evidentiary hearing.  *See* 28 U.S.C. § 2255(b); *Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003); *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986).  The Sixth Circuit has indicated that the petitioner's "burden for establishing an entitlement to an evidentiary hearing is relatively light." *Smith*, 348 F.3d at 550.  Nevertheless, a hearing is not necessary if the petitioner's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007).

The Court finds that Waller is not entitled to an evidentiary hearing because, as articulated below, the motion and records in this case conclusively show that Waller is not entitled to relief. Accordingly, Waller's motions for evidentiary hearings (Doc. 327 and Case No. 1:08-CV-936, Doc. 3) are **DENIED**.

## IV.    ANALYSIS

In his § 2255 Motion, Waller alleges that: (1) the district court violated his right to public trial when it closed the courtroom during a portion of the trial; (2) his trial counsel provided ineffective assistance; (3) his appellate counsel provided ineffective assistance; and (4) his

9

Confrontation Clause rights were violated when the district court permitted Special Agent O'Rourke to testify as to Darnell Lester's statements. After examining the parties' filings and reviewing the record, the Court finds that Waller's claims are without merit.

### A. Right to a Public Trial (Claims 1 and 2)

Waller asserts three claims relating to his Sixth Amendment right to public trial. First, Waller claims that the Court's order partially closing the courtroom violated his Sixth Amendment right to a public trial (Claim 1). Second, Waller contends that his trial counsel was ineffective for failing to object, at the start of his second trial, to the Court's partial closure of the court (Claim 2). Third, Waller argues that his appellate counsel rendered ineffective assistance by failing to raise this issue on appeal (Claim 2).

#### 1. Ineffective Assistance of Trial Counsel Relating to the Right to Public Trial (Claim 2)

##### a. The Standard for Ineffective Assistance of Counsel

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." The Sixth Amendment right to counsel is the right to <u>effective</u> assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984)(quoting *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970)). In *Strickland*, the Supreme Court set forth a two-part test to determine whether a defendant received ineffective assistance of counsel. *Strickland*, 466 U.S. at 687. First, the defendant must show that counsel's performance was deficient. *Id*. Second, the defendant must prove that the deficiency of counsel's performance had a prejudicial effect. *Id*.

To satisfy the first prong, or the deficiency element, of the *Strickland* test, the defendant must

10

show that counsel made egregious errors that were "so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id*. Demonstrating that counsel's performance was deficient requires a showing counsel's performance did not meet an "objective standard of reasonableness." *Id*. at 688. A defendant must overcome the strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance [and]...that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689. In claiming ineffective assistance of counsel, the defendant must prove his allegations by a preponderance of the evidence. *Pough*, 442 F.3d at 964.

The second prong of the *Strickland* test focuses on prejudice, and the defendant is required to demonstrate that counsel's deficiencies "were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. To show that counsel's deficiencies prejudiced the defense, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability" is probability "sufficient to undermine confidence in the outcome." *Id*.

### b. This Court Followed the Proper Procedure in Ordering the Partial Courtroom Closure.

In his second claim for relief, Waller alleges that his trial counsel was ineffective for failing, at the beginning of his second trial, to raise an objection to the Court's order partially closing the courtroom. (Doc. 313 at 6.) Waller must satisfy both prongs of the *Strickland* test in order to prevail on his claim of ineffective assistance of counsel. Specifically, Waller must show that: (1) by failing to object to the partial courtroom closure, his trial counsel's performance fell below an

11

objective standard of reasonableness; and (2) but for his trial counsel's failure to object to the partial closure of the courtroom, the outcome of his trial would have been different.

Waller's second claim must be denied because Waller cannot satisfy either prong of the *Strickland* test. Trial counsel's failure to object to the courtroom closure was not ineffective assistance because, contrary to Waller's assertions, the Court followed the required procedures in ordering a partial courtroom closure and thus no Sixth Amendment violation occurred.

The Sixth Amendment provides, in pertinent part, that a defendant shall enjoy "the right to a speedy and public trial." The public trial guarantee was created for the benefit of defendants and is designed to: (1) ensure a fair trial; (2) "remind the prosecutor and judge of their responsibility to the accused and the importance of their functions;" (3) encourage witnesses to come forward; and (4) discourage perjury. *Waller v. Georgia*, 467 U.S. 39, 46 (1984); *Peterson v. Williams*, 85 F.3d 39, 43 (2d Cir. 1996)(citing *Waller*, 467 U.S. at 46-47).

Although there is a presumption favoring openness, the right to a public trial is not absolute and "must be balanced against other interests which might justify the closing of the courtroom to the public." *United States v. Eisner*, 533 F.2d 987, 993 (6th Cir. 1976). The power to close the courtroom to the public should be "limited to those situations where such action is deemed necessary to further the administration of justice." *United States v. Hernandez*, 608 F.2d 741, 747 (9th Cir. 1979). A court closure may be justified by "an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise Co. v. Superior Court of Cal.*, 464 U.S. 501, 510 (1984).

12

In *Waller v. Georgia*, the United States Supreme Court set forth a four-part test for determining when a defendant's right to public trial is outweighed by other considerations.[7]  Under *Waller*, a courtroom closure does not violate the Sixth Amendment if: (1) the party seeking to close the courtroom advances an overriding interest that is likely to be prejudiced; (2) the closure is no broader than necessary to protect that interest; (3) the trial court considered reasonable alternatives to closing the proceeding; and (4) the trial court made adequate findings to support the closure. *Waller*, 467 U.S. at 48.  The record this is case reveals that the Court properly considered each prong of the *Waller* test.

### i.  Reasons for the Partial Closure of the Courtroom

While *Waller v. Georgia* dealt with a complete closure of a seven-day suppression hearing in which all persons (other than court personnel, witnesses, parties, and counsel) were excluded throughout the entire proceeding, in this case, the Court's closure can be classified as a partial, temporary closure which was narrowly tailored to serve important interests in protecting witnesses and maintaining courtroom order.

Although the Sixth Circuit does not appear to have directly addressed the application of *Waller* in the context of partial courtroom closures, other circuits have indicated that the *Waller* test is less stringent where there is only a partial, as opposed to a total, courtroom closure.  *Rector v. Wolfe,* Case No. 5:07CV1229, 2009 U.S. Dist. LEXIS 53173, *27-28 (N.D. Ohio June 23, 2009)(Boyko, J.)(gathering cases).[8]  These courts have found that the first prong of the *Waller* test

---

[7]The Court notes that, although they share the same name, there is no relation between Petitioner in this case and the party involved in *Waller v. Georgia*.

[8]*See United States v. Smith*, 426 F.3d 567, 571 (2d Cir. 2005); *United States v. Osborne*, 68 F.3d 94, 99 (5th Cir. 1995); *Garcia v. Bertsch*, 470 F.3d 748, 752-53 (8th Cir. 2006); *United*

requires a "substantial reason" rather than an "overriding interest" when the closure is only partial and at least some access by the public is retained. *See Woods v. Kuhlmann*, 977 F.2d 74, 76 (2d Cir. 1992). Courts have consistently upheld "partial closure orders narrowly tailored to serve the interests for which they were ordered." *Sherlock*, 962 F.2d at 1356.

The right to a public trial "has always been interpreted as being subject to the trial judge's power to keep order in the courtroom. Were this not so a public trial might mean no trial at all at the option of the defendant and his sympathizers." *Hernandez*, 608 F.2d at 747. *Bell v. Evatt*, 72 F.3d 421, 433 (4th Cir. 1995)(finding that the trial judge's prevention of ingress and egress to the courtroom during witness testimony did not violate the public trial right where the "trial judge was merely maintaining order in his courtroom and ensuring a non-disruptive atmosphere").

Courts have found that prevention of witness intimidation is a sufficiently substantial reason to justify a procedure which operates as a partial closure of the courtroom. *See United States v. Brazel*, 102 F.3d 1120, 1155-56 (11th Cir. 1997). In *Brazel*, the trial court *sua sponte* implemented a spectator identification procedure which required any individuals who wanted to enter the courtroom to first provide identification. *Id.* at 1155. The judge indicated that such a procedure was necessary because she had observed individuals entering the courtroom and staring at witnesses who were on the stand. *Id.* The judge noted that the fixed stares "were 'making the witnesses uncomfortable, because I observed it.'" *Id.* On appeal, the court found that such a procedure, if it amounted to a closure at all, was a partial closure because anyone who wanted to enter the courtroom could do so as long as identification was provided. *Id.* The court held that no violation of the Sixth

_____

States v. Sherlock, 962 F.2d 1349, 1356-57 (9th Cir. 1992); *Nieto v. Sullivan*, 879 F.2d 743, 753 (10th Cir. 1989); *United States v. Brazel*, 102 F.3d 1120, 1155 (11th Cir. 1997).

14

Amendment had occurred. *Id*. at 1156.

In the case *sub judice*, the Court was forced to declare a mistrial after a spectator caused a commotion during trial.  (Doc. 215 at 276, 287-291.)  Specifically, on the second day of the defendants' first trial, during the direct examination of Antwan McPherson, the following outburst occurred from the gallery:

> SPECTATOR 1:  He's scared, he's lying.  That's my baby's father.  He's scared.
>
> SPECTATOR 2:  He is lying.
>
> SPECTATOR 1:  That's my baby's father.  He's lying.  He's scared they are going to do something to him.  I was there, Fat Back, with you that night.  I was there that night.  He's lying.
>
> (Spectators removed)
>
> THE COURT:  Shut the door please.  Could someone shut the doors.  Let's approach.

(Doc. 215 at 276:15-25.)[9]  Counsel for Waller immediately moved for a mistrial and was joined by counsel for Ervin.  (Doc. 215 at 277:1-278:16.)  In declaring a mistrial, the Court indicated:

> I have a couple of concerns.  First, we need to, obviously, determine exactly who was in the courtroom, who made the outburst, and we are going to have to ban that individual from the courtroom for the next trial.  I hate to do that, especially because of her obvious personal interest in this case, but given yesterday's outburst and today's outburst, I cannot risk this happening again.

(Doc. 215 at 284:15-21.)  The Court then engaged in a discussion with counsel regarding threats that had been made against one of the government's witnesses, Veron Black, and against co-Defendant Ervin's brother.  (Doc. 215 at 287:2-24.)  Based on these threats, the Court asked the parties whether

---

[9]The transcript does not reveal the full extent of the disruption – the spectators were standing, yelling and pointing; the emotion in and impact of the outburst was substantial.

15

the courtroom should be closed due to safety considerations.[10] (Doc. 215 at 287:25-288:1.) Counsel for Ervin objected to a complete closure of the courtroom. In response, the government proposed that the court close the courtroom "at least for the first part of the case concerning the carjacking." (Doc. 215 at 288:4-8.) Counsel for Waller did not object.

As the record reveals, the Court had substantial reasons for ordering partial closure of the courtroom and thus the first prong of the *Waller* test is satisfied. Specifically, the Court stated that:

> Mr. Turbow, let me make the record clear with respect to everything that's going on in the case. While it is true your clients are entitled to a public trial, there has been noticeable body language out in the gallery and stares and looks to witnesses that I think were intended to be intimidating to some of the live witnesses. And it is from my p[er]spective, which is the p[er]spective of the witness, I have seen them and I have noticed it.

> And so what I am going to, in the interest of avoiding the need for a mistrial in the future and protecting the safety of lay witnesses, I am going to close the courtroom during all lay witness testimony. I understand that that is an extreme position to take, and the Court needs to make very specific findings with respect to that, but other than Court employees, I'm going to close the courtroom during the lay witness testimony.

> We can not keep restarting the trial, and we can't be in a position of having witnesses afraid to testify.

(Doc. 215 at 288:16-289:9.)

The Court further indicated that Dana Watkins, the individual who caused the outburst which led to the mistrial, would be barred from the trial. (Doc. 215 at 291:6-8.) Ms. Watkins is a family member of Darnell Lester. The Court stated that although "the courtroom will be closed during the live witness testimony relating to events that occurred on December 22, 2003," it would reopen "for the events occurring on the morning of December 23, 2003." (Doc. 215 at 291:8-12.) Significantly,

---

[10]The fact that the Court initially proposed closure of the courtroom is irrelevant for purposes of the *Waller* analysis. *Cf. Brazel*, 102 F.3d at 1155-56 (noting that the judge *sua sponte* imposed an identification procedure).

the government called only a few lay witnesses at trial – six to be exact; the bulk of the government's witnesses were law enforcement officers and the bulk of the testimony elicited at trial related to the encounter between Waller and Ervin and the FBI on December 23, 2003.  In addition, the Court indicated that:

> anybody who is going to be in the courtroom during the closed period of time has to be identified in advance, has to have authority from me to be in the courtroom, and can't come and go.  So if they want to be in the courtroom during that period of time, then they have to be in for the entire period of time because the courtroom will be closed.

(Doc. 215 at 292:17-25.)

Consistent with the Court's extensive findings on the record, on August 20, 2004, the Court issued an Order closing the courtroom to the public "beginning as of the moment the first witness is called to testify."  (Doc. 212 at 1.)  The Order further stated that the Court intended to reopen the courtroom to the public after the completion of testimony by certain witnesses.  (*Id*.)  In addition, the Order provided that:

> As an exception to this closing of the Courtroom, any person wishing to attend any otherwise-closed portion of the trial may seek from the Court advance authorization to attend.  If the Court has not granted a person authorization in advance, that person shall not be admitted into the Courtroom.  Members of the press **are** required to obtain such advance authorization.

(Doc. 212 at 2)(emphasis in original).  Neither Waller nor Ervin filed a motion objecting to the Court's closure order.

The interests supporting the Court's partial closure – maintaining order in the courtroom and preventing witness intimidation – were substantial in nature.  As a result, there was a sufficient basis for the Court to order partial closure of the courtroom.

17

### ii.  Scope of the Closure

With respect to the second prong of the *Waller* test, which deals with the scope of the closure, the Court's partial closure order was narrowly tailored to protect lay witnesses and maintain order in the courtroom.  Whether a closure is broad or narrow depends on several factors, including: (1) its duration; (2) whether the public can learn what took place while the court was closed (i.e. through transcripts); (3) whether the evidence presented during the closure was "essential, or whether it was merely cumulative or ancillary;" and (4) whether selected individuals were barred from the courtroom or whether all spectators were barred from observing the proceedings.  *Bowden v. Keane*, 237 F.3d 125, 129-30 (2d Cir. 2001).

In his Affidavit supporting his Traverse, Waller states that his family tried to attend his second trial but was denied access.  (Doc. 325-1 at ¶ 3.)  The Court recognizes that exclusion of a defendant's family members and friends "is not a step to be taken lightly."  *See Carson v. Fischer*, 421 F.3d 83, 91 (2d Cir. 2005).  The Court notes, however, that its Order specifically indicated that "any person wishing to attend any otherwise-closed portion of the trial may seek from the Court advance authorization to attend."  (Doc. 212 at 2.)  In this way, the partial closure Order barred only those individuals who chose not to request permission to attend the closed portions of the trial.  No members of Waller's family attempted to seek advance authorization to attend the closed proceedings.  The only individuals barred without the possibility of an exception were members of Darnell Lester's family – individuals whose animosity toward Waller and Ervin was substantial.

In this case, the partial closure ordered by the Court was narrow because: (1) it only closed the courtroom during the testimony of the few lay witnesses whose testimony related to the events that took place on December 22, 2003; (2) voir dire, opening statements, and the vast majority of the

witness testimony were open to the public; (3) only two individuals – Dana Watkins and Karen Burge – were completely banned from the courtroom (due to their outbursts during the first trial); (4) it allowed any person, other than the two individuals who caused the outburst, to seek advance authorization to attend all parts of the trial; and (5) the Court did not limit the availability of transcripts and therefore the testimony was available to the public.  As such, the limited closure ordered was no broader than necessary given the Court's substantial and overriding interests in protecting the safety of the lay witnesses and maintaining courtroom order.

### iii.  Reasonable Alternatives to Closure

With respect to the third *Waller* factor, courts have found that "once a trial judge has determined that limited closure is warranted as an alternative to complete closure, the judge . . . [need not] *sua sponte* consider further alternatives." *Bowden*, 237 F.3d at 131.  In other words, when ordering a partial closure of the courtroom, a trial judge need only consider reasonable alternatives at the request of a party.  *Id*. at 131 n.3.

In this case, the Court ordered a partial closure of the courtroom only for the testimony of certain lay witnesses.  The record reveals that the Court asked the parties whether a complete courtroom closure was necessary.  (Doc. 215 at 287:25-288:1.)  In response, the government proposed that the Court close the courtroom "at least for the first part of the case concerning the carjacking," but reopen for the second part of the case concerning the events that took place at Rally's on December 23, 2004. (Doc. 215 at 288:4-8.)  Counsel for Ervin proposed simply having the Court "clearly instruct anybody that comes into the courtroom."  (Doc. 215 at 288:9-15.) The record reveals that the Court considered, and in fact adopted, an alternative to a complete courtroom closure when it ordered a temporary, limited closure, with the right to request relief from that

19

closure.  The Court notes, moreover, that Waller did not propose any alternatives to the partial

courtroom closure.  As a result, the third requirement of the *Waller* test was satisfied.

### iv.  The Court Made Specific Factual Findings Supporting Closure

The fourth and final prong of the *Waller* test requires that the trial court make findings

adequate to support the closure.  The purpose of this requirement is to allow a "reviewing court [to]

determine whether the closure order was properly entered."  *Woods*, 977 F.2d at 77.  The evidence

required to support a closure varies from case to case, depending on the scope of the closure.  *See*

*Brown v. Kuhlmann*, 142 F.3d 529, 538 (2d Cir. 1998)(explaining that "the strength of the judge's

findings must be evaluated by reference to the . . . scope of the closure that they support").

Before deciding to order a partial courtroom closure, the Court engaged in an extensive on-

the-record discussion with counsel.  The Court detailed the events which transpired leading to

mistrial in the first trial, including the fact that there had been more than one instance in which the

proceedings had been disrupted by spectators, discussed with counsel threats made against witnesses

and obvious efforts by spectators to intimidate witnesses while they were testifying, and explained

why the Court believed it was appropriate and, in fact, necessary to close the courtroom.  The Court

pointed to specific concerns with the safety of lay witnesses and with the need to maintain orderly

proceedings.  In other words, the Court made detailed findings which supported the limited closure

ordered.

### c.  Waller Cannot Show that His Counsel was Ineffective for Failing to Object to the Partial Courtroom Closure.

Waller has no basis for arguing that counsel was ineffective because the Court properly

considered each of the *Waller* factors and provided extensive findings on the record supporting its

decision to order a partial courtroom closure.   Trial counsel was not required to raise an objection to the court closure because any such objection would have been futile.  Waller cannot show that by failing to object, his trial counsel's actions fell below an objective standard of reasonableness.

Waller's claim also fails because he cannot show that the decision not to object to the partial closure was outside the bounds of what could be considered reasonable trial strategy in the circumstances.  *See Strickland*, 466 U.S. at 689 (stating that "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'").  Counsel for Waller and Ervin both felt that the outbursts during the first trial were sufficiently prejudicial to their clients to warrant a request for a mistrial.  It is not unreasonable to assume that those same counsel believed it was in their client's best interests to avoid a repeat of what occurred in the first trial.

It is all the more reasonable to assume that counsel felt the partial closure was in their client's best interests, moreover, because the only two individuals wholly barred from the courtroom were members of Lester's family, individuals who had expressed great animosity toward Waller and Ervin over Lester's death.  In such circumstances, it is more likely that counsel's performance would have been deficient if counsel had *not* agreed to the limited restrictions the Court put in place to protect the integrity of the proceedings and the defendants' ability to receive a fair trial.

Finally, even if Waller could establish sufficient deficiency of counsel to satisfy the first prong of *Strickland*, he cannot show that he was actually prejudiced by counsel's failure to object.  Waller has not sufficiently demonstrated a "reasonable probability" that the outcome of his trial would have been different but for the partial courtroom closure.  *See Strickland*, 466 U.S. at 694.  The jury was neither aware of the partial closure, nor of the reasons for it; it is inconceivable that the

21

fact of the closure could have affected their decision-making.  As a result, Waller's ineffective assistance of counsel claim relating to his right to public trial is without merit.

>    **2.     Ineffective Assistance of Appellate Counsel Relating to the Right to Public Trial (Claim 2)**

In his second claim for relief, Waller further argues that his appellate counsel was ineffective for failing to argue that the district court violated Waller's right to public trial when it ordered partial closure of the courtroom.  Waller claims that his appellate counsel's failure to raise this issue "was below professional norms."  (Doc. 313 at 6.)

It is well-established that there is a constitutional right to effective assistance of counsel in connection with a defendant's first appeal.  *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  Defendants raising claims of ineffective assistance of appellate counsel must meet the two-part *Strickland* test. *Valentine*, 488 F.3d at 338.  With claims of ineffective assistance of appellate counsel, however, the court first must assess the strength of the claim appellate counsel failed to raise.  *Id*.  Appellate counsel's failure to raise an issue on appeal "could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004).

Appellate counsel does not have a duty to raise every non-frivolous issue suggested by a defendant.  *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983) (noting that a "brief that raises every colorable issue runs the risk of burying good arguments").  Indeed, the process of "winnowing out weaker arguments on appeal" is "the hallmark of effective appellate advocacy."  *Smith v. Murray*, 477 U.S. 527, 536 (1986)(quoting *Barnes*, 463 U.S. at 751-52)).  Appellate counsel is obligated to "master the trial record, thoroughly research the law, and exercise judgment in identifying the

arguments that may be advanced on appeal." *McCoy v. Court of Appeals, Dist. 1*, 486 U.S. 429, 438

(1988).  Counsel's decision to argue only one central issue on appeal does not violate this obligation.

*Jones*, 463 U.S. at 751-52.

> The Seventh Circuit has indicated that:
>
> When a claim of ineffective assistance of counsel is based on failure to raise viable issues, the district court must examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal. Significant issues which could have been raised should then be compared to those which were raised.

*Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985).  As a general rule, "only when ignored issues are

clearly stronger than those presented, will the presumption of effective assistance of counsel be

overcome."  *Smith v. Robbins*, 528 U.S. 259, 288 (2000)(quoting *Gray*, 800 F.2d at 646)(emphasis

added).

The central issue is whether reasonable appellate counsel could conclude that the public trial

issue was not worthy of raising on direct appeal.  *See Range v. United States*, No. 93-4099, 1994

U.S. App. LEXIS 14415, *6-7 (6th Cir. June 9, 1994).  Given the Court's extensive findings

demonstrating that each prong of the *Waller* test was satisfied, reasonable appellate counsel would

probably not assert a public trial claim on appeal.  Based on the record, a reasonable attorney would

likely conclude that such a claim was without merit and would reasonably believe that there were

stronger claims to assert on direct appeal.  This is especially true, moreover, because appellate

counsel would have been aware that no contemporaneous objection to the closure had been made

by trial counsel.

Waller fails to present any compelling arguments demonstrating appellate counsel's

ineffectiveness.  Nor does Waller "show a reasonable probability that his conviction would have

been reversed if this argument had been raised on direct appeal." *See Burton v. Renico*, 391 F.3d 764, 779 (6th Cir. 2004). Accordingly, Waller has failed to establish ineffective assistance of appellate counsel with respect to the public trial issue.

### 3.    Waller's Public Trial Claim is Procedurally Defaulted (Claim 1)

Because the Court did not err in deciding to partially close the courtroom, Waller's ineffective assistance of counsel claims set forth in Claim 2 fail on the merits. Likewise, Waller's first claim for relief – that the Court's partial closure of the courtroom during the testimony of certain witnesses violated his Sixth Amendment right to a public trial – fails because it is barred by the doctrine of procedural default. As the government correctly notes, Waller failed to raise this issue on direct appeal. As a result, Waller's claim is procedurally barred absent a showing of cause and actual prejudice. *Bousley*, 523 U.S. at 621.[11]

To show cause, a defendant must establish a substantial reason to excuse the default. This requirement may be satisfied through a showing of ineffective assistance of counsel. *See Washington v. Hofbauer*, 228 F.3d 689, 698 (6th Cir. 2000) (noting that "ineffective assistance of counsel can provide the necessary 'cause' for the procedural default"). The prejudice analysis for procedural default and the prejudice required to prove ineffective assistance of counsel are "sufficiently similar to treat as the same." *Hall v. Vasbinder*, 563 F.3d 222, 237 (6th Cir. 2009); *Joseph v. Coyle*, 469 F.3d 441, 462-63 (6th Cir. 2006)(noting that "*Strickland* prejudice likewise establishes prejudice for purposes of cause and prejudice").

Waller does not offer any explanations for his failure to raise his public trial claim on direct

---

[11]The Court notes that Waller does not attempt to show "actual innocence" in his § 2255 Motion.

appeal. Presumably, based on his ineffective assistance of counsel claims relating to this issue, Waller is implicitly alleging that he should not be barred from presenting this claim because counsel's ineffective assistance provides the requisite "cause" excusing his procedural default.  As previously indicated, however, Waller cannot show either that trial counsel was ineffective for failing to object, or that appellate counsel was ineffective for failing to raise this issue on appeal. Accordingly, Waller's ineffective assistance of counsel claims do not establish cause to overcome his procedural default.

Because Waller failed to establish cause, it is unnecessary for this Court to determine whether he was prejudiced by the alleged violation. *See Bousley*, 523 U.S. at 623.  Moreover, while it is true that prejudice is presumed from a public trial violation, no such violation occurred in this case, and therefore Waller is not entitled to a presumption of prejudice. *See Owens v. United States*, 483 F.3d 48, 63 (1st Cir. 2007)(noting that "once a petitioner demonstrates a violation of his Sixth Amendment right to a public trial, he need not show that the violation prejudiced him in any way. The mere demonstration that his right to a public trial was violated entitles a petitioner to relief"). Similarly, at least one judge in this district has recently found that "it is not clear whether partial closures, even if constituting structural errors, can relieve the petitioner from establishing prejudice." *Rector v. Wolfe*, No. 5:07CV1229, 2009 U.S. Dist. LEXIS 53173, *33 (N.D. Ohio June 23, 2009)(Boyko, J.).

Because Waller cannot demonstrate that either trial or appellate counsel was ineffective with respect to his public trial right, Waller cannot show the cause necessary to excuse his procedural default.  Even if his procedural default was excused, the Court finds this claim to be without merit because, as previously set forth in detail, the Court followed the proper procedures in ordering partial

25

closure of the courtroom and therefore did not violate Waller's Sixth Amendment rights.

**B.    Waller Cannot Show Ineffective Assistance of Trial Counsel on Claims 4, 5, or 6.**

Additionally, Waller argues that his trial counsel was constitutionally ineffective because: (1) he failed to object to the imposition of consecutive sentences under § 924(c) (Claim 4); (2) he failed to object to the admission of "hearsay evidence of Antwan McPherson through government witness Veron Black" (Claim 5); and (3) he failed to inform Waller of his right to testify at trial (Claim 6).

As previously indicated, a defendant asserting a claim for ineffective assistance of counsel must demonstrate that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  A defendant must overcome the strong presumption "that counsel's conduct falls within the wide range of reasonable professional assistance" and that "under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689.

**1.    Consecutive Sentencing For Two § 924(c) Convictions (Claim 4)**

In his fourth claim for relief, Waller argues that his trial counsel's failure to object to the imposition of consecutive sentences on Counts 2 and 9 constitutes ineffective assistance.  Waller asserts this as an ineffective assistance of counsel claim because he must: it is well-settled that sentencing errors must be raised on direct appeal, or be waived. *See Weinberger*, 268 F.3d at 351 ("Sentencing challenges generally cannot be made for the first time in a post-conviction § 2255 motion.  Normally, sentencing challenges must be made on direct appeal or they are waived.").  To

26

avoid this res judicata bar, Waller couches his complaints about this Court's sentencing determinations as ones asserted under *Strickland*.

Waller's claim regarding the consecutive sentences imposed upon him under § 924(c) fails for several reasons, the threshold one being that the premise of his claim – i.e., counsel's failure to object – is wrong. Waller's counsel and Ervin's counsel both objected to the imposition of consecutive sentences for the convictions on Counts 2 and 9. Indeed, as the Court acknowledged during sentencing, counsel filed "very detailed" objections in pre-sentencing briefs contending that the Court would "essentially [be] imposing two penalties for the same offense to separately charge 924(c)" in each of those Counts. (Doc. 280 (Sentencing Tr.) at 20.) Thus, the Court acknowledged that counsel had argued strenuously that separate convictions and sentences under § 924(c) for the conduct described in Counts 2 and 9 would be inappropriate, and then rejected those arguments. The Court concluded that, given the circumstances involved in Counts 2 and 9, separate and consecutive § 924(c) sentences were consistent with current precedent and were warranted. (*Id.*) Given counsel's objections to the Court's sentencing determinations, Waller was required to raise any continuing complaints about those determinations on direct appeal. His failure to do so bars him from doing so now. *See Weinberger*, 268 F.3d at 351.

Even if Waller could raise issues now about his sentencing via a claim of ineffective assistance of counsel, his claim would fail on the merits because the Court did not err when it imposed consecutive sentences on the § 924(c) counts. Waller was indicted on Counts 2 and 9 for violating 18 U.S.C. § 924(c)(1)(A). Section 924(c) provides that "any person who, during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of such crime, possesses a firearm" shall be

27

sentenced to an additional term of imprisonment.  18 U.S.C.  § 924(c)(1)(A).  The statute further provides that "no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person . . ."  § 924(c)(1)(D)(ii).  Therefore, the express terms of the statute require that each § 924(c) sentence run consecutive to, and not concurrent with, any other sentence imposed.

It is well-established in the Sixth Circuit that the "imposition of separate consecutive sentences for multiple § 924(c) violations occurring during the same criminal episode are lawful." *United States v. Burnette*, 170 F.3d 567, 572 (6th Cir. 1999).  In *Burnette*, the court found that consecutive sentences for two § 924(c) violations was warranted where "the kidnapping occurred significantly before, and independent of, the actual bank robbery, rather than being in any way simultaneous." *Id*.  Therefore, where a defendant is convicted of two § 924(c) violations involving separate predicate offenses which occurred at different times, consecutive sentences are lawfully imposed.  *See id.*

With respect to Count 2 of the Indictment, Waller was found guilty of carrying or using a firearm in relation to carjacking.  As to Count 9 of the Indictment, Waller was found guilty of carrying or using a firearm in relation to the attempted murder of federal officers.  On Count 2, Waller was sentenced to 84 months (7 years), to run consecutive to Counts 1, 3-6, and 9.  (Doc. 272 at 2.)  On Count 9, Waller was sentenced to 300 months (25 years), to run consecutive to Counts 1-6. (*Id*.)

Waller argues that Counts 2 and 9 arose out of a "continued course of criminal conduct involving a single kidnapping crime."  (Doc. 313 at 8.)  Contrary to Waller's assertions, however, Counts 2 and 9 involved separate predicate offenses.  While Count 2 used the carjacking charged in

Count 1 as the predicate offense, Count 9 cited the attempted murder of federal officers as the predicate offenses. In addition, the carjacking occurred, and was completed, on December 22, 2003, and the attempted murder of federal officers did not occur until several hours later on December 23, 2003. The two events, moreover, occurred at different locations and in the presence of entirely different sets of witnesses. In other words, the record reveals that the carjacking was independent of the attempted murder of federal officers.

The Court finds that the imposition of consecutive sentences for two separate § 924(c) convictions was appropriate. Indeed, based on the statutory language set forth in § 924(c)(1)(D)(ii), the Court was required to impose consecutive sentences of imprisonment on Counts 2 and 9. Thus, even if counsel had not objected to the consecutive sentence imposed on Waller for Counts 2 and 9, his failure to do so would not have been deficient under *Strickland*.

Waller similarly fails to satisfy the prejudice prong of the *Strickland* because he cannot show that his sentence would have been different in the presence of additional objections by counsel. As the transcript reveals, the Court considered the question of whether consecutive sentences were appropriate – considering both the facts presented at trial with respect to the crimes charged and all relevant case law. The Court assumed the defendants strenuously objected to consecutive sentences on these Counts and only imposed them after carefully assessing the propriety of doing so. No additional arguments from counsel would have altered the Court's conclusion.

For all of these reasons, Waller's claim 4 fails and cannot support his request for relief under § 2255.

29

## 2. Not Objecting to Hearsay Evidence (Claim 5)

Waller argues that his trial counsel rendered ineffective assistance by failing to object to the introduction of alleged hearsay testimony. Specifically, Waller contends that his counsel should have objected because the introduction of this testimony violated his Confrontation Clause rights. (Doc. 313 at 9.) Again, Waller's claim must be analyzed under *Strickland*. Because the Court concludes that Waller cannot satisfy either prong of *Strickland*, this claim also fails.

In assessing the deficiency prong, the Court looks to both whether any objection to the testimony at issue would have been well-taken and to whether, even if it would have been, counsel's failure to object could reasonably be considered a legitimate trial tactic under the circumstances. *See Lundgren v. Mitchell*, 440 F.3d 754, 774 (6th Cir. 2006)(noting that counsel may have sound tactical reasons for not objecting and therefore "any single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial to a client that failure to object essentially defaults the case to the state"); *Lockett v. Arn*, 740 F.2d 407, 412 (6th Cir. 1984)("[T]he mere failure to object to evidence . . . does not render counsel ineffective."); *United States v. Loukas*, 909 F.2d 1485, *12 (6th Cir. 1990)("There are a host of reasons why trial counsel might decide to forego an arguably sound evidentiary objection.").

Turning to the first inquiry – whether the statement was excludable as improper hearsay, Waller contends that the following testimony elicited during the direct examination of government witness Veron Black constituted impermissible hearsay:

Q:  And what was Fat Back telling Darnell?

A:  That Aubrey, and he just said Aubrey and them, was planning a kidnap and robbing.

30

(Doc. 295 at 137:22-24.)  Waller argues that because Antwan McPherson, also known as "Fat Back," did not testify, the introduction of his statements through Veron Black violated his Confrontation Clause rights.  (Doc. 313 at 9-10.)

The Supreme Court has held that the Confrontation Clause applies only to statements that are both testimonial and offered to prove the truth of the matter asserted.  *See Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004); *United States v. Cromer*, 389 F.3d 662, 676-77 (6th Cir. 2004).  In *Crawford*, the Court held that "when testimonial, out-of-court statements of an unavailable declarant are offered to prove the truth of the matter asserted, the admission of those statements violates the Confrontation Clause unless the defendant has had an opportunity to cross-examine the declarant." *Cromer*, 389 F.3d at 676-77.  A statement is "testimonial" when "the declarant intends to bear testimony against the accused." *Id.* at 675.  Whether a declarant intends to bear testimony against the accused can be determined by asking "whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime." *Id.*

The Government contends that the statement at issue was neither offered for the truth asserted, nor testimonial in nature, and that trial counsel, thus, was not ineffective for failing to object to its admission.  *See Awad v. United States*, No. 93-2378, 1994 U.S. App. LEXIS 9386 *4 (6th Cir. April 27, 1994)(finding that "counsel was not ineffective for failing to object because an objection would have been meritless"); *see also Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998)(noting that "failure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness").  The Government is correct on both points.

31

Hearsay is defined as an out of court statement "offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). A statement that is "not offered to prove the truth of the matter asserted but to show its effect on the listener is not hearsay." *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 379 (6th Cir. 2009). Such statements can be offered to explain the listener's subsequent conduct. *See United States v. Pugh*, 273 Fed.Appx. 449, 456 (6th Cir. 2008)(citing *United States v. Cantu*, 876 F.2d 1134, 1137 (5th Cir. 1989)).

Considered in context, it is clear that the statement was not offered to show that Waller and Ervin were, in fact, planning a kidnapping and a robbery of Darnell Lester. The statement, rather, was offered to explain why Lester went from one location to another to confront Waller. Black testified that, in response to learning from McPherson that "Aubrey and them was planning a kidnap and robbing," Darnell Lester "really didn't say nothing. He didn't say anything. That's what made him turn around and come back up there . . . to Moe's store where they was standing." (Doc. 295 at 138:4-9.) The testimony was offered to show what actions Lester took in response to McPherson's statements and to explain the movements of the individuals involved in the events of December 22, 2003. Because the statements were not offered to establish the truth of the matter asserted, they are not hearsay and the Confrontation Clause does not apply. *See Crawford*, 541 U.S. at 59 n.9.

Even if the statement were hearsay, it was not testimonial in nature because there is no evidence suggesting that McPherson "intended to bear testimony" against Waller. *See Cromer*, 389 F.3d at 675. There is no indication that a reasonable person in McPherson's position would anticipate his statements being used against Waller in a future investigation and prosecution. *See id.* The statements were not made to law enforcement, and McPherson had no way of knowing that

32

his statements would be used against Waller in investigating and prosecuting the crimes of carjacking and attempted murder of federal officers. Significantly, Waller and Ervin were not charged with the kidnapping of Darnell Lester. Accordingly, McPherson's statements do not raise Confrontation Clause issues because they were not testimonial.

Because any objection likely would have been overruled, the failure to assert it cannot be deemed deficient under *Strickland*. Even if the statement were excludable, moreover, counsel's failure to seek to do so still would not have been so unreasonable as to render his performance constitutionally deficient. As previously indicated, in assessing *Strickland*'s deficiency prong, the Court looks both to whether any objection to the testimony would have been well-taken, and to whether, even if it would have been, counsel had a strategic reason not to object. *See Loukas*, 909 F.2d at *12 ("There are a host of reasons why trial counsel might decide to forego an arguably sound evidentiary objection. A strategic decision not to object where an objection might not be sustained or, even if sustained, might unduly emphasize the evidence being presented by affording the proffering attorney the opportunity to begin again with its introduction, may well be wise, rather than ineffective counseling.").

In this case, counsel may have had strategic reasons for wanting McPherson's statements to come in because they supported the defense theory that Lester was party to a scheme to fake his own kidnapping for ransom, and was not, in fact, a victim. (*See* Doc. 295 at 49:7-20). For example, during opening statement, counsel for co-Defendant Ervin suggested to the jury:

> [A]sk yourself if Darnell Lester was kidnapped, why was he sitting in the front seat of the Jimmy automobile . . . when the FBI arrived? There will be no evidence, ladies and gentlemen, that Darnell Lester was restrained. There will be no evidence presented to you in any of the physical evidence or in any of the testimony that

33

> Darnell Lester was bound, that he had duct tape on his arms, as an example, or that he was being held, physically held, by that I mean tied down in some sort of way, in the green Jimmy.

(Doc. 295 at 49:9-20.)  In other words, counsel may have decided not to object to the statement that "Aubrey and them was planning a kidnap and robbing," because the fact that Lester went to talk with Waller in the face of hearing that statement supported the defense theory that Lester was involved in the plan and was neither kidnapped, nor carjacked.  Because counsel's failure to object could reasonably be considered a legitimate trial tactic, Waller cannot show that his counsel was constitutionally deficient.

The final piece of the *Strickland* analysis is also fatal to Waller's claim – his inability to show that this one statement was so prejudicial in the context of the entire case presented by the government as to warrant habeas relief.  At worst, the out of court statement by McPherson supported the government's theory that kidnapping for the purpose of robbing Lester's supposed drug dealing cohorts was Waller's motive for the carjacking.  There was, however, overwhelming evidence of this fact elsewhere in the record.  Indeed, Agent O'Rourke's testimony on this point – testimony the Sixth Circuit found to have been proper – was both extensive and compelling.  In the context of the record considered as a whole, Waller simply has not shown that exclusion of this single piece of testimony would have had any material effect on the outcome of his trial.

Thus, because counsel was not deficient and Waller has failed to establish that he was prejudiced by counsel's failure to object to Veron Black's testimony, Waller has not established the ineffective assistance of counsel claim he asserts in Claim 5 of his Motion.

34

### 3.    Right to Testify (Claim 6)

Waller next argues that counsel was ineffective for failing to inform him of his constitutional right to testify.  Specifically, Waller claims that counsel did not tell him that he had control over the ultimate decision as to whether to testify.  (Doc. 313 at 10.)

A defendant's right to testify is a fundamental right which is subject only to a knowing and voluntary waiver by the defendant.  *United States v. Webber*, 208 F.3d 545, 550-51 (6th Cir. 2000). Defense counsel's role is to advise the defendant as to whether to testify, but the ultimate decision rests with the defendant.  *Id*. at 551.  When a tactical decision is made not to have the defendant testify, "the defendant's assent is presumed."  *Id*.

A defendant who wants to testify, despite his counsel's advice to the contrary, must exercise his right by either: (1) insisting on taking the stand; (2) communicating with the trial court; or (3) discharging counsel.  *Id*.  In other words, the defendant must take some affirmative action to notify the court that he wants to testify on his own behalf.  When a defendant is silent, and fails to inform the court of the disagreement with counsel as to whether to testify, waiver of the right to testify may be presumed.  *Id*.

A trial court is not required to *sua sponte* address a defendant to inquire as to whether the defendant knowingly and intentionally waived his right to testify.  *Id*.  Nor is a trial court required to make a record of the defendant's waiver of the right to testify.  *Id*.

In his § 2255 Motion, Waller stated that at the time of trial he:

did not know from any other source that he possessed such a right, and [had] counsel correctly informed him of this right, and he would have known that the ultimate decision regarding whether he exercised that right or not belong[ed] to him, he would have exercised that right and testified to the facts stated in his § 2255 affidavit, which

if believed by the jury, would have a reasonable probability of affecting the outcome of their verdict.

(Doc. 313 at 10-11.) In his supporting Affidavit, Waller states that after the government rested its case, he asked his attorney to put him on the stand. (Case No. 1:08-CV-936, Doc. 1-1, at ¶ 2).[12] He alleges that in response, his attorney informed him that due to his criminal record, he would not be calling Waller to the stand. (*Id*.)

Waller has presented no evidence suggesting that the decision not to testify was not based on sound trial strategy. There is no evidence in the record suggesting that Waller attempted to alert the trial court to a disagreement with his counsel regarding whether he should testify. In fact, before the defense rested, the Court addressed Waller directly, on the record, and inquired as to his decision not to testify:

THE COURT: Mr. Waller, have you discussed with counsel the question of whether or not you wish to testify in this proceeding?

MR. WALLER: Yes, Your Honor.

THE COURT: And do you understand that while you have the right not to testify, you also have the right to testify?

MR. WALLER: Yes, Your Honor.

THE COURT: And is your decision not to testify in this proceeding a voluntary decision on your part?

MR. WALLER: Yes, Your Honor.

THE COURT: And you think you have had an adequate opportunity to discuss that issue with counsel?

---

[12]Waller's Affidavit in Support of his § 2255 Motion is only attached at Case No. 1:08-CV-936, Doc. 1-1, and is not attached to the § 2255 Motion filed in the corresponding criminal case, Case No. 1:04-CR-13, Doc. 313.

> MR. WALLER:  Yes, Your Honor.
>
> THE COURT:  Okay.  And your decision is to rest on your right not to testify?
>
> MR. WALLER:  Yes, Your Honor.

(Doc. 282 at 1242-43.)  In light of this colloquy, it is clear that Waller was aware of his right to testify and that he voluntarily waived this right.

Waller cannot show that his counsel was deficient in failing to advise him of his right to testify because the record reveals that counsel did, in fact, inform Waller of this right.[13] Consequently, Waller's claim of ineffective assistance of counsel regarding his right to testify is without merit.

### C.  Waller Cannot Demonstrate Ineffective Assistance of Appellate Counsel on Claims 3 or 8.

As previously indicated, the two-part *Strickland* test applies to claims for ineffective assistance of appellate counsel.  *Valentine*, 488 F.3d at 338.  Appellate counsel's failure to raise an issue on appeal "could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result on appeal."  *McFarland*, 356 F.3d at 699.

In the present case, Waller's appellate counsel focused his direct appeal on one central issue: alleged violation of Waller's Confrontation Clause rights.  Waller argues that his appellate counsel was constitutionally ineffective because he failed to argue that: (1) the district court violated Waller's

---

[13]Even if Waller could show his counsel was deficient in failing to properly advise him, he cannot demonstrate a reasonable probability that the outcome of his trial would have been different had counsel advised him that only he could waive his right to testify.  *See Strickland*, 466 U.S. at 688-94.  Waller's assertions in his Affidavit that his testimony would have contradicted the evidence presented at trial, or otherwise told a different story, are insufficient to demonstrate prejudice under the second prong of the *Strickland* test.

due process rights when it denied his request to call two special agents to testify on his behalf (Claim 3); and (2) the district court erred in denying his motion for judgment of acquittal (Claim 8).

### 1.      Right to Compulsory Process (Claim 3)

Waller asserts that his appellate counsel was ineffective for failing to raise on appeal the district court's denial of his request to call two FBI agents to testify on his behalf.  The Sixth Amendment guarantees every criminal defendant "the right . . . to have compulsory process for obtaining witnesses in his favor."  The Supreme Court of the United States has indicated that "at a minimum," "criminal defendants have . . . the right to put before a jury evidence that might influence the determination of guilt."  *Taylor v. Illinois*, 484 U.S. 400, 407-408 (1988).  This right to compulsory process exists only where a defendant "make[s] some plausible showing of how [the desired witness'] testimony would have been both material and favorable to his defense."  *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982).  In *Valenzuela-Bernal*, the Court specifically noted that the right to compulsory process does not guarantee a criminal defendant the right to compel the attendance and testimony of any and all witnesses.  *Id*.

In his § 2255 Motion, Waller argues that he needed to call two agents from the FBI's New York Office – Joseph Riley and Stephen Bucar – who had reviewed and approved Agent O'Rourke's 302 report, to determine whether there was any "foul play" in the fact that Agent Stephen Vogt had not kept copies of notes O'Rourke had faxed to Vogt on December 22 and 23.  (Doc. 313 at 6-7.) As it turned out, Agent O'Rourke retained copies of the notes sent and those copies were provided to defense counsel.  (Doc. 215 at 298:1-12.)  The Court denied Waller's request to subpoena the two agents on the basis that "there wasn't a sufficient showing of need for those agents to be brought in." (*Id*. at 300:19-24.)  The Court noted that it was unnecessary to bring the two agents in because

Waller would have an opportunity to cross-examine Agent O'Rourke at trial regarding his notes and what he sent to Vogt. (Doc. 215 at 301:4-17.) The Court further stated that:

> If it appears that after confronting Agent O'Rourke with his statement, if there seems to be a need to establish with collateral material issues relating to Agent O'Rourke's credibility on this question, then I will reconsider your request to have those agents brought in, and I will make sure the government does it on an expedited basis. So have those agents on standby. They may have to come in after Agent O'Rourke's testimony if the Court finds that Agent O'Rourke is confronted with the apparent inconsistent statement, there is an inadequate response in the Court's view, or [a] response that leaves open a fair argument that collateral evidence of inconsistency would be appropriate.

(Doc. 215 at 301:5-17.) Waller's counsel did not raise the issue again after Agent O'Rourke's testimony, apparently satisfied with the cross examination.

Applying the two-pronged *Strickland* test, Waller cannot show that his appellate counsel was deficient for failing to raise the compulsory process issue on appeal. The Court finds that a reasonable appellate attorney likely would conclude that the Court's decision to deny Waller's request to call the two FBI agents as defense witnesses was not worthy of mention on appeal. This is particularly true in light of the Court's indication that, although Waller had not made a sufficient showing of need initially with respect to the agents' testimony, the Court was willing to have the agents brought in to testify in the event that defense counsel believed the cross-examination of Agent O'Rourke was insufficient to address their concerns about his notes. Waller's trial counsel engaged in substantial cross-examination of O'Rourke regarding his notes and what he did or did not convey to Agent Vogt and chose not to reopen the question of whether agents Riley and Bucar should be brought from New York to testify. Accordingly, a reasonable appellate attorney would know that

39

there was little potential merit in raising this issue on appeal and would not have been deficient in failing to do so.

With respect to the second prong of the *Strickland* test, Waller has failed to make a sufficient showing of prejudice.  Specifically, Waller cannot show that but for his counsel's failure to raise this issue, he would have prevailed on his direct appeal.  Indeed, Waller still does not even explain why the testimony of these agents would have been meaningful to his defense.

The Court finds that appellate counsel's failure to raise the compulsory process issue on appeal does not amount to ineffective assistance of counsel.  Accordingly, Waller's third claim for relief is without merit.

### 2. The District Court's Denial of the Motion for Judgment of Acquittal on Count 1 (Claim 8)

At the close of the government's case, counsel for Waller moved for judgment of acquittal pursuant to Rule 29 as to each count in the indictment.  (Doc. 300 at 1130:25-1131:4.)  The Court denied both Waller and Ervin's Rule 29 motions.  (Doc. 300 at 1135:13-1136:13.)  Waller argues that: (1) the district court erred in denying his motion for judgment of acquittal on Count 1; and (2) his appellate counsel was ineffective for failing to raise this issue on appeal.  With respect to his first claim, Waller has procedurally defaulted this issue by failing to raise it on direct appeal.  Waller cannot show cause and prejudice sufficient to overcome this procedural default because, as set forth in detail below, he cannot show that appellate counsel was ineffective for failing to raise this issue on direct appeal.[14]

---

[14]Waller does not allege actual innocence.  In order to establish actual innocence, Waller would have to demonstrate that, in light of the evidence, a reasonable juror would not have convicted him.  *See Bousley*, 523 U.S. at 623.

40

Where appellate counsel raises the denial of a motion for judgment of acquittal on direct appeal, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)(emphasis in original).  This standard places a "very heavy burden" on the defendant challenging the sufficiency of the evidence. *United States v. Tocco*, 200 F.3d 401, 424 (6th Cir. 2000).  When sufficiency of the evidence is raised on appeal, the Sixth Circuit will not "weigh the evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury." *United States v. Ferguson*, 23 F.3d 135, 140 (6th Cir. 1994).

In order to prove carjacking in violation of 18 U.S.C. § 2119, the government must show that the defendant:  (1) with intent to cause death or serious bodily harm; (2) took a motor vehicle; (3) that had been transported in interstate commerce; (4) from the person or presence of another; (5) by force and violence or intimidation.  *See United States v. Fekete*, 535 F.3d 471, 476 (6th Cir. 2008). The Sixth Circuit has indicated that a defendant is guilty of carjacking if the government can show that the defendant "had the intent to kill or seriously harm his carjacking victim if the victim resisted, even if the victim did not in fact resist and no attempts to inflict such harm were made." *United States v. Adams*, 265 F.3d 420, 424 (6th Cir. 2001).  In *Adams*, the court noted that "physically touching a victim with a weapon, standing alone, is sufficient to justify a finding that the victim faces an imminent threat on the part of the defendant to act violently." *Id*. at 425.

Count 1 of the Second Superseding Indictment also charged Waller and Ervin with violation of 18 U.S.C. § 2, which provides, in pertinent part, that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission is punishable

41

as a principal." Aiding and abetting has been described "as one's desire to 'in some sort associate himself with the venture, that he participate in it as something that he wishes to bring about, that he seek by his action to make it succeed.'" *Rattigan v. United States*, 151 F.3d 551, 557 (6th Cir. 1998)(citing *United States v. Morrow*, 977 F.2d 222, 230 (6 th Cir. 1992)(en banc)). To be convicted of aiding and abetting, a defendant must possess the "intent to assist or influence the commission of the underlying predicate crime." *Id.* at 558. Courts have found that a defendant possessed the required intent to be found guilty of aiding and abetting a carjacking if the defendant "consciously shared some knowledge" of a co-defendant's intent to commit the carjacking. *United States v. Otero-Mendez*, 273 F.3d 46, 52 (1st Cir. 2001); *United States v. Vallejos*, 421 F.3d 1119, 1123 (10th Cir. 2005).

Waller claims that the denial of his Rule 29 motion was improper because the government failed to prove every element of carjacking beyond a reasonable doubt. (Doc. 317 at 3-4.) Specifically, Waller claims that the government failed to establish the requisite "intent to cause death or serious bodily harm" to the person from whom the vehicle was taken. (*Id.*) As the government argues, however, the evidence showed that Waller and Ervin acted together in accomplishing the carjacking offense. Ervin, armed with a firearm, entered the driver's side of the vehicle and ordered everyone out. (Doc. 295 at 148:11-149:16.) Waller, who was also armed, dragged Darnell Lester into the vehicle. (Doc. 295 at 149:21-150:23.) The record contains evidence that once Waller got Lester in the vehicle, he struck Lester two or three times in the head with a firearm, "to the point where he started bleeding." (Doc. 295 at 152:5-153:7.) As the government notes, "[u]nless Waller was aware that Ervin had control of the van, there was no motive for forcing Lester into the vehicle." (Doc. 321 at 45.) Taking this evidence in the light most favorable to the government, a rational trier

of fact could have found that Waller aided and abetted Ervin in the commission of the carjacking offense with the requisite intent to cause serious bodily harm.[15]

Based on the record, appellate counsel's performance in not raising this issue was not deficient. Reasonable appellate counsel would have concluded that challenging the sufficiency of the evidence by raising this Court's denial of the motion for judgment of acquittal would have been futile. Because Waller cannot show ineffective assistance of appellate counsel, he cannot demonstrate the requisite cause to overcome his procedural default of this claim. Accordingly, Waller's eighth claim for relief lacks merit.

### D.      Confrontation Clause (Claim 7)

In his seventh claim for relief, Waller argues that his Sixth Amendment Confrontation Clause rights were violated when the trial court permitted FBI Agent O'Rourke "to testify extensively about what Darnell Lester told him on the telephone concerning the alleged criminal conduct for which Waller was indicted." (Doc. 313 at 11.) Waller admits that he raised this issue on direct appeal and

---

[15]The Court instructed the jury that:

to find a defendant guilty of carjacking as alleged in Count 1, it is not necessary for you to find that he personally committed the crime himself. You may also find him guilty if he intentionally helped, induced or directed someone else to commit the crime. A person who does this is called an aider and abettor . . .

To determine whether a defendant aided or abetted the commission of a crime with which he is charged, ask yourself these questions. Did he participate in the crime as charged as something he wished to bring about? Did he knowingly and willfully associate himself with the criminal venture? Did he seek by his actions to make the criminal venture succeed? If he did, then the defendant is an aider and abettor and therefore guilty of the offense. If, on the other hand, your answer to any one of these questions is no, then the defendant is not an aider and abettor and you must find him not guilty.

(Doc. 283 at 1480:20-25; 1482:2-12.)

it is well-established that, absent exceptional circumstances, such as an intervening change in the law, a petitioner may not use his § 2255 motion to relitigate an issue that was raised on direct appeal. *Wright*, 182 F.3d at 467.

In his Traverse, Waller claims that the Supreme Court's recent decision in *Giles v. California*, 128 S.Ct. 2678, 171 L.Ed.2d 488 (2008), represents such an intervening change, and demonstrates that his Confrontation Clause rights were violated.  In *Giles*, the Court held that the "forfeiture by wrongdoing" doctrine, which is codified in Rule 804(b)(6) of the Federal Rules of Evidence, is limited to cases in which the defendant acted with the intent the prevent the witness from testifying at trial.  *Id*. at 2683-84; *see also United States v. Taylor*, 622 F.Supp.2d 693, 697 n.2 (E.D. Tenn. 2008)(noting that *Giles* "partly overrules Sixth Circuit precedent, which did not impose an intent requirement").

Waller's seventh claim for relief fails because: (1) the statements at issue were not offered for the truth of the matters asserted, and therefore the Confrontation Clause was not implicated; and (2) although the Sixth Circuit affirmed on alternate grounds, it did not reverse this Court's finding that the statements were not hearsay.

> **1.     Waller's Right to Confrontation Was Not Violated Because the Statements Were Not Hearsay.**

In this case, the Court permitted Officer O'Rourke to testify regarding Lester's statements on the basis that the testimony was not offered for the truth of the matter asserted and thus was not impermissible hearsay. (Doc. 296 at 314:13-19.)  At trial, FBI Agent O'Rourke testified regarding his cell phone conversations with Darnell Lester.  Specifically, O'Rourke testified that Lester told him: how many kidnappers were involved, whether they were armed, and that they demanded

44

ransom.  (Doc. 296 at 323:3-324:20.)  O'Rourke also testified that he relayed this information to the Cleveland FBI in an effort to coordinate a rescue attempt. (*Id*.)  Counsel for Waller objected to this testimony under *Crawford* on the basis that Darnell Lester was not available for cross-examination. (Doc. 296 at 314:3-9.)

In response, the Court indicated that "the purpose of the testimony is to show [w]hat this agent was put on notice [of] and in turn what the Cleveland agents were put on notice of, and it is not offered for the truth of the matters asserted, particularly, where kidnapping is not one of the charges in this particular case."  (Doc. 296 at 314:13-19.)  In other words, this Court found that the out of court statements explained why the officers took the actions they did – why they converged on the Rally's location when they did so, and how they did so.  *See United States v. Martin*, 897 F.2d 1368, 1371 (6th Cir. 1990)(finding that an out of court statement offered "for the limited purpose of explaining how and why the investigation began" was not hearsay).  The Court notes, moreover, that it gave the jury the following limiting instruction regarding the statements made by Darnell Lester to FBI Agent O'Rourke:

> You have heard evidence regarding statements made by Darnell Lester to FBI Agent O'Rourke.  This evidence was offered to you for a very limited purpose, and you may only consider it for that limited purpose.  Specifically, the evidence was offered to explain why Agent O'Rourke took the actions he took on December 22 and 23, 2003, and why Cleveland FBI agents and law enforcement personnel assisting them took the actions they took on those days, including appearing at the Rally's restaurant at East 81st and Euclid on the early morning hours of December 23, 2003.  Whether this evidence is probative of that question is for you to decide.

> You may not assume that the content of the statements Darnell Lester made to agent O'Rourke are true, however, and no one has argued to you that they were, in fact, true.  Darnell Lester cannot be cross-examined and the veracity of his statements cannot be tested.  It would be improper for you to convict the defendants of any of

45

the crimes with which they have been charged based upon, or even partially based upon, the statements Darnell Lester made to Agent O'Rourke.

(Doc. 240 at 58.)  The Court further instructed that, because the defendants were not charged with kidnapping,

whether or not Darnell Lester claimed he was held against his will during the hours between the alleged events at Cedar's Finest (Moe's) and the events at the Rally's restaurant is irrelevant to the crimes charged in this case, and may not be considered by you in reaching your verdicts or conducting your deliberations.

(Doc. 240 at 58.)  Because the statements were not offered to establish the truth of the matter asserted, the Confrontation Clause was not implicated.  *See Crawford*, 541 U.S. at 59, n. 9

## 2.     The Sixth Circuit Affirmed this Court's Decision on Alternate Grounds.

On direct appeal, the Sixth Circuit first discussed this Court's jury instruction allowing the introduction of Lester's statements and limiting their use to explaining "why the FBI agents, including O'Rourke, took the actions they did." *United States v. Ervin*, 209 Fed.Appx. 519, 521 (6th Cir. 2006).  In its subsequent analysis, the court did not opine on the issue of hearsay, and instead began an analysis of *Crawford* and the forfeiture by wrongdoing doctrine.  *Id*.  Specifically, the Sixth Circuit indicated that, because Waller and Ervin were responsible for Darnell Lester's unavailability, they forfeited their right to confront him, "even if their intent was not to prevent his testimony." *Id*. at 521-22.  The court cited to a prior decision in which it held that the forfeiture by wrongdoing principle "applies regardless of the defendant's motive, that is, even if the defendant did not act with the intent to prevent the witness from testifying." *Id*. at 521 (citing *United States v. Garcia-Meza*, 403 F.3d 364, 370-71 (6th Cir. 2005)).  Applying this principle, the Sixth Circuit stated that:

46

> Similarly, the defendants are responsible for Darnell Lester's unavailability.  They put in motion the events that led to the confrontation in the Rally's parking lot.  More immediately, Ervin's attempt to run down the FBI agent caused the agent to shoot in self-defense.  Darnell Lester died because of Ervin's actions.  Waller was part of the criminal activity, as well.  Both are therefore responsible for Lester's unavailability.  They have forfeited the right to confront him as a result, even if their intent was not to prevent his testimony.

*Id*. at 521-22.

In other words, the Sixth Circuit affirmed this Court's decision, but on a basis other than that relied upon by this Court.  Importantly, the Sixth Circuit did not state that the reason given by this Court for admitting Agent O'Rourke's testimony (i.e., that the testimony was not offered for the truth of the matter asserted) was incorrect.  The Sixth Circuit did not specifically address the issue of whether Darnell Lester's statements were hearsay.  Instead, the court simply indicated that the statements fell within the forfeiture by wrongdoing exception because Waller and Ervin's own actions led to Lester's unavailability.  Based on the foregoing, the Court interprets the Sixth Circuit's analysis as resolving this issue on an alternative grounds which assumed, arguendo, that the statement was hearsay, but did not reverse this Court's finding that it was not hearsay.

Because the Sixth Circuit invoked the forfeiture by wrongdoing exception, Waller argues that the Supreme Court's recent decision in *Giles* alters the analysis and demonstrates that his Confrontation Clause rights were violated.  Specifically, Waller contends that, in light of *Giles*, the government was required to show that Waller *intended* to prevent Lester from testifying against him at trial.  Waller submits that because there was no such evidence of intent, Lester's statements should have been excluded.  (Doc. 325 at 11.)

47

While it is true that there was no evidence adduced at trial suggesting that either Waller or Ervin intended to prevent Lester from testifying at trial, the Court need not reach the question of whether *Giles* would require a different analysis than that employed by the Sixth Circuit on appeal.[16] Because neither *Giles* nor any subsequent case law alters this Court's original analysis – i.e., that Lester's statements were not offered to prove the truth of the matters asserted, and thus were not

---

[16]It is not clear that *Giles* would even apply retroactively to cases in which the defendant's direct appeal concluded before *Giles* was issued. *See Salerno v. Michigan*, No. 1:05-cv-344, 2009 U.S. Dist. LEXIS 48627, *17 n.3 (W.D. Mich. June 9, 2009)("Even if the court considered Salerno's *Giles* argument, it is not at all clear that *Giles* should be applied retroactively to a case whose direct review had concluded before *Giles* issued."). In this case, Waller's direct review concluded on October 1, 2007, when the United States Supreme Court denied his petition for *writ of certiorari*. The Supreme Court issued *Giles* on June 25, 2008.

As the *Salerno* court indicated, very few federal courts have addressed this issue and of those that have, two have concluded that *Giles* "does not apply retroactively to cases whose direct review concluded before it came out." *Id*.; *see Meeks v. McKune*, 607 F.Supp.2d 1235, 1242-43 (D. Kan. 2009)(finding that the Supreme Court announced a new rule because "there is a new obligation on the States and Federal government to establish the defendant's intent in committing the wrongful act before the forfeiture by wrongdoing exception may be applicable. Because this is a new obligation, *Giles* promulgated a new rule"); *Robinson v. Mississippi*, No. 2:07cv120-M-A, 2008 U.S. Dist. LEXIS 57942, *10 n.1 (N.D. Miss. July 29, 2008) (characterizing *Giles*' interpretation of the Confrontation Clause as a "newly announced rule"); *but see James v. Marshall*, No. 06-3399-CAS(E), 2008 U.S. Dist. LEXIS 108408 *52 n.6 (C.D. Cal. Aug. 13, 2008)("the *Giles* Court's lengthy historical discussion makes it clear that the Court was applying a rule having its origins in centuries-old English and American common law. *Teague* [*v. Lane*, 489 U.S. 288 (1989), which generally provides that new rules of criminal procedure will not apply retroactively] does not render inapplicable the rule of *Giles*").

In at least one case, post-*Giles*, moreover, the Sixth Circuit rejected a petitioner's Confrontation Clause claims, including a claim based on *Giles*, on grounds that the statements at issue were not testimonial and therefore were not subject to the Confrontation Clause. *See Doan v. Carter*, 548 F.3d 449, 458-59 (6th Cir. 2008). Similarly, in this case, there is no Confrontation Clause issue because Lester's statements were not offered for the truth of the matters asserted and therefore were not hearsay.

48

hearsay – the Court finds no Confrontation Clause issue and concludes that Waller is not entitled to relief on this ground.

## V.  CONCLUSION

For the foregoing reasons, Waller's Motion for Leave to Amend his § 2255 Petition (Doc. 317) is **GRANTED,** his Motion for Stay and Abeyance (Case No. 1:08-CV-936, Doc. 2) is **DENIED** as moot, his Motions for Evidentiary Hearings (Doc. 327 and Case No. 1:08-CV-936, Doc. 3) are **DENIED**, and his Motion to Vacate Under 28 U.S.C. § 2255 (Doc. 313) is **DENIED**. Waller's case, therefore, is **DISMISSED**.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith as to any claims except Waller's Confrontation Clause claim in his seventh claim for relief. There is no basis upon which to issue a certificate of appealability for any of Waller's other claims because he has not "made a substantial showing of the denial of a constitutional right" with respect to those claims. 28 U.S.C. § 2253(c)(2).

As to Waller's seventh claim for relief, the Court issues a certificate of appealability on the basis that: (1) as previously noted, the Sixth Circuit did not address this Court's findings when first presented with the issue on appeal; and (2) the Sixth Circuit has not yet decided whether *Giles* would apply retroactively to a case where direct review concluded prior to the decision in *Giles*. Accordingly, the Court **ISSUES a Certificate of Appealability** with respect to Claim Seven of Waller's § 2255 Motion.  *See* 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.                                    s/Kathleen M. O'Malley
                                                     **KATHLEEN McDONALD O'MALLEY**
                                                     **UNITED STATES DISTRICT JUDGE**

**Dated: February 26, 2010**